UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>CONNORS BROS. INCOME FUND, )<br>)<br>and )<br>)<br>BUMBLE BEE SEAFOODS, LLC, )<br>)<br>*Defendants*. )<br>_____) | CASE NUMBER 1:04CV01494 (JDB) |

## FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, and defendants, Connors Bros. Income Fund and Bumble Bee Seafoods, LLC, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree that venue and jurisdiction are proper in this Court;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of the Divestiture Assets by defendants to assure that competition is not substantially lessened;

AND WHEREAS, plaintiff requires defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestitures required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. Jurisdiction

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. Definitions

As used in this Final Judgment:

A. "Acquirer" means the entity to whom defendants or the trustee divest the Divestiture Assets.

B. "Bumble Bee" means defendant Bumble Bee Seafoods, LLC, a Delaware limited liability corporation with its headquarters in San Diego, California, its successors and assigns, and its subsidiaries, divisions, groups, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Connors" means defendant Connors Bros. Income Fund, a Canadian income trust with its headquarters in Blacks Harbour, New Brunswick, Canada, its successors and assigns, and its subsidiaries, divisions, groups, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D. "Label" means all legal rights owned or possessed by the defendants pertaining to a brand's trademarks, trade names, service names, service marks, copyrights, designs, and trade dress associated with the goods and services sold under a brand name.

E. "Divestiture Assets" include:

1. The Port Clyde, Commander, Bulldog, Neptune, Admiral, and Possum Labels, except the Neptune Label for clam products;

2. All existing inventories of sardines, kippered herring snacks, and other canned seafood products sold under the Port Clyde, Commander, Bulldog, Neptune, Admiral, and Possum Labels;

3. All existing inventories of cans and wrappings for sardines, kippered herring snacks, and other canned seafood products that are marked with Port Clyde, Commander, Bulldog, Neptune, Admiral, and Possum Labels;

4. At the Acquirer's option, no more than one of the following Connors processing assets:

    a. The Bath plant located at 101 Bowery Street, Bath, Maine 04530; including all rights, titles and interests in any tangible assets (*e.g.*, land, buildings, docking and unloading facilities, warehouses, other real property and improvements, fixtures, machinery, equipment, tooling, fixed assets, personal property, and office furniture), relating to Connors canned seafood business, including all fee and leasehold and renewal rights in such assets or any options to purchase any adjoining property; or

    b. The Grand Manan plant located in New Brunswick, Canada at Seal Cove, Grand Manan, New Brunswick EOG 3BO; including all rights, titles and interests in any tangible assets (*e.g.*, land, buildings, docking and unloading facilities, warehouses, other real property and improvements, fixtures, machinery, equipment,

       tooling, fixed assets, personal property, and office furniture), relating to Connors canned seafood business, including all fee and leasehold and renewal rights in such assets or any options to purchase any adjoining property;

5. All additional tangible and intangible assets that are used in manufacturing, distributing, marketing, and selling sardines, kippered herring snacks, and other canned seafood products sold under the Port Clyde, Commander, Bulldog, Neptune, Admiral, and Possum Labels, including research and development activities and equipment; all licenses, permits and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings; marketing studies, promotion plans, advertising materials; packaging, marketing and distribution know-how and documentation, such as route maps; inventory, delivery and storage vehicles, storage and warehouse facilities and agreements; customer lists, contracts, accounts, credit records, and agreements; supplier lists and agreements; repair and performance records, and all other records; and

6. All additional intangible assets that are used in manufacturing, distributing, marketing, and selling sardines, kippered herring snacks, and other canned seafood products sold under the Port Clyde, Commander, Bulldog, Neptune, Admiral, and Possum Labels, including those used in developing, producing, and servicing such products, including, but not limited to all patents, licenses, and sublicenses, intellectual property, copyrights; brand technical information and production know-how, including but not limited to, recipes and formulas and any improvements to, or line extensions thereof; and computer software and related documentation; know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices; safety procedures for the handling of materials and substances; all research data concerning historic and current research and development; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information defendants provide to their own employees, customers, suppliers, agents or licensees; and all research data concerning historic and current research and development efforts, including, but not limited to designs of experiments, and the results of successful and unsuccessful designs and experiments.

### III. Applicability

4

A.  This Final Judgment applies to defendants Connors and Bumble Bee, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.  If the defendants sell or otherwise dispose of all of their assets, or lesser business units that include the Divestiture Assets, they shall require that the purchaser agrees to be bound by the provisions of this Final Judgment, provided, however, that defendants need not obtain such an agreement from the Acquirer.

## IV. Divestitures

A.  Defendants are ordered and directed, within one hundred and twenty (120) calendar days after the filing of the Complaint in this matter, or five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period, which collectively shall not exceed sixty (60) days in total, and shall notify the Court in such circumstances. Defendants shall use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.  In accomplishing the divestiture ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets. Defendants shall inform any person making inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents

relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client or work-product privileges. Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.   Defendants shall provide the prospective Acquirers and the United States information relating to the personnel involved in the operation and management of the Divestiture Assets to enable the Acquirer to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer to employ any defendant's employee whose primary responsibility is the operation and management of the Divestiture Assets.

D.   Defendants shall permit prospective Acquirers to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information relating to the Divestiture Assets; and access to any and all financial, operational, strategic or other documents and information relating to the Divestiture Assets customarily provided as part of a due diligence process.

E.   Defendants shall warrant to all prospective Acquirers that each asset will be operational on the date of sale.

F.   Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.   Defendants will not introduce or sell any canned seafood products under the Labels contained in the Divestiture Assets; however, defendants may continue to introduce and sell clam products under the Neptune Label.

6

H.  Defendants shall warrant to the Acquirer of the Divestiture Assets that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.  Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, shall be sold to a single Acquirer, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business of the sale of canned sardines.

J.  The divestitures, whether pursuant to Section IV or Section V of this Final Judgment,

1.  Shall be made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the business of packing and producing (unless otherwise acquired), marketing, distributing, and selling canned sardine products; and

2.  Shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and defendants give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

K.  In connection with the divestiture of the Divestiture Assets pursuant to Sections IV or V of this Final Judgment, the Defendants may offer the Acquirer short-term, transitional supply and services agreements, not to exceed six months in length, for the supply of canned

7

sardines and the provision of services required to transfer the Port Clyde, Commander, Bulldog, Neptune, Admiral and Possum brand sardine business to the Acquirer. The terms and conditions of any such agreements must be acceptable to the United States in its sole discretion. Upon the expiration or termination of such agreements, the Defendants shall not enter into or have any supply or service agreements with the Acquirer relating to the sale of sardines for a period of three years thereafter.

## V. Appointment of Trustee

A.       If defendants have not divested the Divestiture Assets within the time period specified in Section IV(A), defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.       After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Divestiture Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.       Defendants shall not object to a sale by the trustee on any ground other than the trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the

8

United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.  The trustee shall serve at the cost and expense of defendants, on such terms and conditions as the plaintiff approves, and shall account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.  Defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.  After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems

9

confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G. If the trustee has not accomplished such divestiture within three (3) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the plaintiff who shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestiture

A. Within two (2) business days following execution of a definitive divestiture agreement, defendants or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendants. The

notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.  Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties otherwise agree.

C.  Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the trustee, whichever is later, the United States shall provide written notice to defendants and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

11

## VII. Financing

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Final Judgment has been accomplished defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. Affidavits

A. Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or Section V, defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or Section V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, shall describe in detail each contact with any such person during that period, and shall describe in detail which of the Divestiture Assets each such person made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring. Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective purchasers, including the limitations, if any, on such

12

information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. Compliance Inspection

A.      For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

      1.      Access during defendants' office hours to inspect and copy, or at the United States' option, to require defendants to provide copies of, all books, ledgers, accounts, records, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

    2.    To interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.    Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or interrogatory responses, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

### XI. No Reacquisition

Defendants may not reacquire any part of the Divestiture Assets from the Acquirer, or their successors, during the term of this Final Judgment.

### XII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIII. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry.

### XIV. Public Interest Determination

Entry of this Final Judgment is in the public interest.

Date: April 18, 2005

John D. Bates

United States District Judge